Jeffrey A. SAWYER et al.

v.

Eugene J. COZZOLINO et al.

Nos. 89–366–M.P., 89–367–M.P.

Supreme Court of Rhode Island.

July 24, 1991.

John J. Gentile, Jr., Kelly Fracassa, Vincent J. Naccarto, Nardone, Turo & Naccarto, John R. Payne, Jr., Westerly, for plaintiffs.

Lauren Jones, Jones Associates, Providence, David Gervasini, Westerly, Eleanor Brown, Providence, Howard Street, Jr., Leniha, Moone, Gallogly & Comolli, Westerly, for defendants.

## OPINION

WEISBERGER, Justice.

This case comes before us on the petition for a writ of certiorari brought by Michael J. Beddard and Anita Beddard and the Westerly Town Council.[1] The plaintiffs, Jeffrey A. Sawyer and Cathleen A. Alban (plaintiffs), are the owners of a parcel of land in the town of Westerly designated as lot No. 98 on tax assessor's plat No. 150. The property in question is located in an R–30 residential zone that, according to the Westerly Zoning Ordinance, requires single-family dwelling sites to have a minimum lot size of 30,000 square feet and a

1. On January 31, 1990, this court issued an order granting the petitions for issuance of the writ. The order also granted the town council's motion to be substituted for the zoning board as petitioner and granted the Beddards' motion to consolidate the two petitions.

minimum lot frontage of 120 feet. The plaintiffs' property has a total area of approximately 95,380 square feet and a 200–foot lot frontage. An existing residence is located on the front portion of the lot.

On September 11, 1987, plaintiffs filed a variance application with the Westerly Zoning Board. The plaintiffs sought to create a new building lot on the rear portion of lot No. 98. The plaintiffs' application requested a 100–foot frontage variance for the planned rear lot. Access to the rear lot would be accomplished via a 20–foot–wide strip that would run approximately 200 feet alongside the front lot. That strip would then join the rear lot at an angle.

A public hearing regarding plaintiffs' variance application was held before the Westerly Zoning Board (the board) on October 7, 1987. In their application plaintiffs stated as grounds for hardship:

"We, the applicants, are purchasing 136 Watch Hill Rd., Westerly, RI as a summer home and would like to share this pretty area with an extended family member. We have more than adequate acreage, adequate side, and rear yard lines, however, we are shy frontage. We appeal to you because we would like to subdivide the above lot #98 to create another building lot."[2]

Further, at the hearing, Cathleen Alban testified:

"The hardship would be there is an awful lot of land there much more * * * (inaudible). A beautiful area, we appreciate the area, it would be easier to take care of the area if it were smaller and if we shared it with someone who we felt as though we would like to be in close proximity with."

Several abutting homeowners and neighbors voiced objections to the application. Thomas Lenihan, the attorney representing some of the objectors, argued that the real issue before the board was a subdivision of the property. Lenihan stated that "[the]

applicants themselves, although not lawyers, use the word subdivide. They are asking to subdivide * * *. There is no question that they are using the word subdivision because this is what they want to do."

In the dialogue among the board members to clarify the issue, chairman Thomas L. Toscano, Jr., stated:

"What they are really looking for is a split lot and a variance on frontage. That's exactly what it is. * * * No, [the prior applicant] was not asking for a split lot. He was not splitting the lot. The property line was staying the same and he was going to put two houses on it. There is the difference. [The prior applicant] was going to maintain one lot with two houses. This is not the case here. This is looking for a split lot, to have two lots out of one."

At the conclusion of the hearing, board member Cynthia A. O'Brien–Luzzi moved to disapprove plaintiffs' application on the following grounds:

"I feel that it will be contrary to the public interest, and the public interest being of the Watch Hill and Turtleback Road area, when the existing lots average approximately 90,000 square [feet] you know the type of area that you are building in and you buy because you want more land around you. I think its lovely that you would like to share your property with someone, but at the same time when that lot is [split] there may not be a loving relationship that passes on from time to time. Also, there is no hardship shown."

Board member John O. Pescatello approved the motion "based on the fact that there is no hardship and I also believe that it would decrease the value of the land surrounding it and it's not in the best interest of the (inaudible)."

Board member Eugene J. Cozzolino disapproved the motion, stating that the board had "approved other frontage variances in

---

**2.** Section XIII of the Westerly Zoning Ordinance provides:

"The applicant for a variance from the provisions of this ordinance shall show to the satisfaction of the zoning board that such

relief will not be contrary to the public interest and that owing to special or peculiar site conditions enforcement of the provisions of this ordinance would result in unnecessary hardship to the applicant."

other areas of town as long as [the variance] didn't make it smaller in width or length or square footage." Regarding the sizes of the lots in the area, Cozzolino noted, "Zoning said 30,000 square feet so that's why I disapprove the motion."

Board member Michael Turano voted to disapprove the motion since in his opinion there was a hardship in that the rear portion of plaintiffs' lot was landlocked. Turano also noted that the board had approved similar motions on prior occasions.

Chairman of the board Toscano also voted to disapprove the motion, relying to a great extent upon the past record of the board in voting to approve similar applications regarding lots in various parts of Westerly. According to Toscano, in all the prior zoning applications "everything was met but road frontage and that's all we're talking about is road frontage, we're not talking about square footage, we're not talking about sideline variances or anything, we're talking about road frontage."

The motion to deny the application did not have sufficient votes to pass. At the advice of the town solicitor, a second motion was made to approve plaintiffs' application. Three members voted to approve the application, and two voted to deny it. Section XIV(B) of the Westerly Zoning Ordinance requires four concurring votes to grant a variance. Thus plaintiffs' application was not approved.

The plaintiffs appealed the decision to the Washington County Superior Court pursuant to G.L.1956 (1980 Reenactment) § 45–24–20. On May 6, 1988, Michael J. Beddard and Anita Beddard intervened as party defendants.[3]

On June 28, 1989, the trial justice issued a written decision reversing the zoning board's denial of plaintiffs' variance application. The trial justice ruled that the board did not properly apply the so-called

Viti Doctrine[4] and that the board's decision was arbitrary. According to the trial justice, the primary issue in the matter was whether the board applied the correct standard in denying the application since dissenting board members relied in part upon plaintiffs' lack of sufficient hardship. The trial justice determined that the relief sought by plaintiffs was a variance from frontage requirements, more properly characterized as a deviation. Thus, the trial justice reasoned, plaintiffs need only demonstrate an adverse impact amounting to more than a mere inconvenience.

Further, the trial justice determined that literal adherence to the zoning ordinance would preclude plaintiffs from building a house on the proposed rear lot. The trial justice stated: "This lot would comply with the zoning ordinance in all respects except the frontage requirement. A strict application of the ordinance clearly amounts to more than a mere inconvenience as a matter of law."

Additionally the trial justice determined that statements made by board Chairman Toscano supported plaintiffs' allegation that the zoning board's decision was arbitrary.

The Beddards and the board filed petitions for issuance of writ of certiorari, seeking review of the trial justice's judgment. This court issued an order granting the petitions for issuance of the writ, granting the town council's motion to be substituted for the board as petitioner, and granting the Beddards' motion to consolidate the two petitions.

The determinative issue raised in this petition is whether the trial justice erred in reversing the decision of the Westerly Zoning Board of Review. Since the dispositive issue in this case is jurisdictional in nature, it may be noticed for the first

---

3. The Beddards' property abuts plaintiffs' property.

4. The Viti Doctrine is the zoning principle enunciated in *Viti v. Zoning Board of Review of Providence*, 92 R.I. 59, 166 A.2d 211 (1960). Where the relief sought is a variance from frontage requirements, the relief is properly charac-

terized as a deviation. A deviation defines the type of relief available from restrictions governing a permitted use, such as area, setback or frontage requirements. Where a deviation is the relief sought, plaintiffs need only demonstrate an adverse impact amounting to more than a mere inconvenience.

time on appeal. *See Cavanagh v. Cavanagh,* 118 R.I. 608, 616, 375 A.2d 911, 915 (1977). Further facts will be supplied as necessary.

■ We note at the outset the well-settled rule that in reviewing a decision of the Superior Court in its consideration of an appeal from a municipal zoning board, this court's review is confined to a determination of whether the trial justice acted within his or her authority as set forth in G.L.1956 (1988 Reenactment) § 45–24–20. We shall not weigh the evidence but shall determine whether competent evidence exists to support the trial justice's decision. That decision will not be reversed unless the trial justice "misapplied the law, misconceived or overlooked material evidence, or made findings that were clearly wrong." *Brum v. Conley,* 572 A.2d 1332, 1335 (R.I.1990); *Skelley v. Zoning Board of Review of South Kingston,* 569 A.2d 1054, 1056 (R.I.1990).

The defendants argue that the trial justice misapplied the law and incorrectly held that the relief sought in this case could be granted as a "deviation." A review of the trial justice's decision indicates that after considering the relief requested by plaintiffs, the trial justice determined that the standard for a true variance was not applicable to the facts of the case since plaintiffs' proposed use was residential—a permitted use in an R–30 zone. The trial justice relied upon the decision of this court in *Gara Realty, Inc. v. Zoning Board of Review of South Kingston,* 523 A.2d 855, 858 (R.I.1987), for the proposition that a true variance is the appropriate relief when the proposed use of the property varies from the uses permitted under the ordinance. Thus, the trial justice reasoned, plaintiffs were not compelled to demonstrate that strict compliance with the ordinance would deprive them of all beneficial use of their property.

Rather the trial justice was persuaded by our decision in *Felicio v. Fleury,* 557 A.2d 480 (R.I.1989), in which we held that the trial justice erred in affirming the North Smithfield Zoning Board's denial of an application from minimum lot size and front-

age requirements for an existing lot. We characterized this type of relief as a deviation and concluded that the trial justice misapplied the law in not properly applying the Viti Doctrine. In the instant case the trial justice characterized plaintiffs' requested relief as a deviation and determined that strict adherence to the zoning ordinance would amount to more than a mere inconvenience since it would effectively operate to preclude plaintiffs from building a house on the proposed rear lot.

After examining the record of the proceedings before the board and the decision of the trial justice, we are persuaded that the decision of the trial justice was affected by error of law.

■ In 1925 the General Assembly enacted P.L.1925, ch. 746, authorizing the town of Westerly to regulate and restrict the subdivision of land into building lots. The language of P.L.1925, ch. 746, § 2, authorized the town council to appoint a zoning board with authority "to pass upon applications for the approval of proposed subdivisions of land into building lots." However, in enacting Westerly's subdivision regulations, the town council specifically relied upon G.L.1956 chapter 23 of title 45 and an ordinance entitled "An Ordinance Reorganizing and Recharging the Planning Board of the Town of Westerly" (enacted by the Westerly Town Council on August 11, 1970, as amended September 14, 1970).

General Laws 1956 (1988 Reenactment) § 45–23–2 specifically authorizes the town council of any town to "authorize and empower the *plan commission* to adopt, modify and amend rules and regulations governing and restricting the platting or other subdivision of land in the * * * town, and to control the subdivision of land pursuant to those rules and regulations." (Emphasis added.) In accordance with chapter 23 of title 45, the Westerly Town Council adopted its subdivision regulations, codified in chapter 22, article III, of the Westerly Code of Ordinances (Westerly Code).

According to section 22–36 of the Westerly Code, "subdivider" is defined as "[t]he owner or owners of the land, a builder/de-

veloper or real estate agent having a financial interest in the development, the sale or the lease of the subdivision either in whole or in part." A review of the proceedings before the board reveals that when asked whether there was any financial consideration attached to the transfer of the property, plaintiffs answered in the affirmative. Thus, it seems that plaintiffs do, indeed, satisfy the definition of "subdivider" established by the Westerly Code.

Further section 22–36 defines "subdivision" as:

"the division of a lot, tract or parcel of land into two (2) or more lots, tracts, parcels or other divisions of land for sale, lease, or other conveyance, or for development, simultaneously or at separate times.

"It also includes resubdivision and, when appropriate to the context, shall relate to the process of subdividing or to the land subdivided."

According to section 22–36, all divisions of land in Westerly are "subdivisions" subject to the planning regulations unless four conditions are met:

"Division of a lot, tract, or parcel shall not be subject to the provisions of these subdivision regulations if each lot, tract or parcel resulting from said division meets all of the following conditions:

(1) An area and dimensions at least equal to that required by the Westerly Zoning Ordinance;

(2) Frontage on an existing street which has been dedicated to the public and accepted by the city or town having jurisdiction, provided said frontage meets the minimum requirements of front lot lines according to the Zoning Ordinance;

(3) Frontage at the minimum setback or building line which is not less than seventy-five (75) per cent of that required at the front lot line or street line by the Zoning Ordinance; and

(4) Provision is made for access to any area isolated from frontage on an existing public street by said division, by reservation of outlets or designation of a mapped street as provided for by Chapter 45–23.1."

A review of plaintiffs' application together with a review of the proceedings before the board leaves little doubt that plaintiffs seek to create by subdivision a second building lot from their existing lot. In their application they ask specifically to "subdivide property to put another vacation house on an area described as lot # 2." At the hearing plaintiffs asked for "a variance to create two houses and two lots from this large piece of property."

Further, when considered in light of the criteria established by section 22–36 of the Westerly Code, the building lot sought to be created by plaintiffs clearly is subject to subdivision status and regulations under article III. Specifically, conditions 1 and 2 of sections 22–36 require that the proposed building lot size have dimensions and frontage that meet the minimum requirements of lot lines under the Westerly Zoning Ordinance on an existing, dedicated street. The existing lot is in Westerly's R–30 zone. The zoning ordinance requires 120 feet of street frontage in an R–30 zone. However, the proposed new building lot would have only 20 feet of frontage some 200 feet away from the proposed building site. Further, condition 4 requires provision for access to any area isolated from frontage on an existing street by the reservation of an outlet or street as provided under G.L.1956 (1988 Reenactment) § 45–23.1–1. The stated purpose of chapter 23.1 of title 45 is to conserve and to promote the public health, safety, morals, and general welfare. However, as plaintiffs stated at the zoning hearing, they had no intention to improve the proposed 200–foot strip that would connect the building lot to the street.

■ Since plaintiffs' proposed division of property does not meet all four criteria necessary to exclude it from subdivision regulations, plaintiffs' appropriate remedy, if any, is by virtue of an application for subdivision of land and thus subject to the jurisdiction of the local planning board. This court has previously recognized the authority of local cities and towns to establish planning boards to regulate the subdi-

vision of land. *See Town of Coventry v. Glickman,* 429 A.2d 440, 443 (R.I.1981). The planning board has authority to regulate the sale of real estate if the sale constitutes a subdivision within the definition of § 45–23–1.[5] *Town of Charlestown v. Falcone,* 560 A.2d 347, 348–49 (R.I.1989).

■ Accordingly we believe that the trial justice erred in characterizing plaintiffs' application as a variance from a frontage requirement or deviation, requiring plaintiffs only to demonstrate an adverse impact amounting to more than a mere inconvenience. The decision of the trial justice, in effect, accorded zoning-restriction relief to a subdivision of land. However, our prior case law indicates a reluctance to intermingle planning and zoning relief.

In *Rozes v. Smith,* 120 R.I. 515, 388 A.2d 816 (1978), this court declared that zoning-area relief cannot be used to subdivide land. Even in circumstances in which relief from minimum lot-size restrictions is considered a deviation rather than a true variance, we recognize a general agreement that " '[a]n area variance may not be granted to solve the problem of an applicant* who subdivided his land and sold portions of it, retaining a substandard lot, who wishes to subdivide a lot * * * .' 3 Anderson, *American Law of Zoning,* § 18.57 at 299–300 (2d ed.1977)." 120 R.I. at 521, 388 A.2d at 820.

Thus, we believe that plaintiffs' application for a variance was not properly brought before the Westerly Zoning Board. The more appropriate avenue for relief would have been to apply to the town planning board for permission to subdivide the existing lot. Assuming that conditional approval for the subdivision would have been granted, plaintiffs would in all likelihood

then have had to go before the zoning board with a request for a variance since, by all indications, the proposed building lot would be substandard. However, we offer these suggestions, without deciding the issues, as mere guidance in the event that plaintiffs decide to pursue other avenues of relief.

The remaining issues raised in this petition are not dispositive and, in light of our decision, need not be addressed.

In fairness to the trial justice, it must be said that the parties did not bring the issue of the jurisdiction of the zoning board to his attention. Since the question of the submission of these issues to the planning board was not raised below, we should ordinarily remand the case to the Superior Court for consideration of this issue. However, since we have clearly indicated in this opinion that the planning board must have initial jurisdiction, we believe it would serve no useful purpose to ask the trial justice to make an independent decision on this question.

For the reasons stated, the petition for certiorari is hereby granted. The judgment of the Superior Court is modified to require a remand of this case to the zoning board with directions to dismiss the petition for variance without prejudice in order that the plaintiffs may apply to the planning board for permission to subdivide the subject lot. The papers in the case may be remanded to the Superior Court with our decision endorsed thereon.

---

**5.** The definitions adopted by sections 22–36 of the Westerly Code are analogous to the definitions set forth in G.L.1956 (1988 Reenactment) § 45–23–1.