Anthony SCIACCA et al.

v.

Gloria CARUSO et al.

No. 99–441–M.P.

Supreme Court of Rhode Island.

April 2, 2001.

Joseph A. Sciacca, Cranston, for Plaintiff.

Robert S. Ciresi, North Providence, John M. Verdecchia, Providence, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

This is a zoning case involving the propriety of granting a dimensional variance for an undersized lot so that the property owner could build a single-family house thereon. Before applying for such zoning relief, however, the owner had obtained planning-board approval to subdivide her previously merged lots back to their original dimensions, thereby restoring them to their undersized status.

Because the property owner created the very hardship that formed the basis for her variance request and because the Superior Court misapplied the law pertaining to its review of the zoning board's approval of a dimensional variance, we grant the neighboring property owners' petition for certiorari and quash the Superior Court's judgment upholding the zoning board's decision.

## Facts and Travel

In 1997, a Town of Johnston (town) resident, defendant Gloria Caruso (owner or Caruso), owned property in the town on which she had constructed a single-family residence. In the 1960s, Caruso had acquired two adjacent but independently buildable lots, formerly known as lot Nos. 91 and 92, on the town assessor's plat No. 6. Lot No. 91 contained 17,990 square feet, with 100 feet of road frontage. The smaller lot, No. 92, measured 14,364 square feet and also featured 100 feet of road frontage. Soon after acquiring these lots, Caruso built a single-family home on lot No. 91, where she thereafter resided; she also landscaped and placed a shed on the adjacent lot No. 92.

In 1979, however, the town amended its zoning ordinance, placing both lots in an "R–20" residential zoning district that required a minimum total area of 20,000 square feet and minimum road frontage of 120 feet to build a single-family dwelling on any given lot. In addition, this same 1979 amendment also included a so-called merger provision,[1] pursuant to which con-

---

1. The merger provision reads as follows:

   "*Contiguous lots under the same ownership.* Where no adjacent lot is in the same ownership at the time this amendment becomes effective, so as to enable the formation of a larger lot, an *existing lot shown on* a plat duly recorded in the office of the town clerk prior to January 6, 1953 which fails to meet either the minimum frontage requirements or minimum area requirements, or both, of this chapter, may be used for a one-family dwelling in an R–40, R–20, R–15, R–10 and R–7 district. Where land adjacent to such a lot is in the same ownership, the exemption of the previous sentence shall not apply. If adjacent land in the same ownership is not sufficient to meet the minimum frontage requirements or

tiguous lot Nos. 91 and 92 merged into one lot to meet this particular residential zoning district's minimum lot area and frontage requirements.

Nevertheless, in 1997, Caruso decided that she wanted to construct a new three-bedroom single-family dwelling on that portion of her property that previously constituted lot No. 92, the smaller of the two merged lots. Because the town's zoning ordinance permitted only one single-family dwelling for each lot within her zoning district, Caruso, through her builder, defendant All Star Excavating, Inc., applied to the town's Planning Board (planning board) to subdivide the merged lot Nos. 91 and 92 back to their original separate lot status. Caruso's abutting and neighboring property owners, however, received no notice of her application to do so.[2] Nevertheless, on October 7, 1997, the planning board conditionally granted Caruso's request and approved a lot-line change, thereby subdividing the lots and restoring them to their original dimensions.[3]

Thereafter, Caruso submitted an application to the town's Zoning Board of Review (zoning board) with respect to the smaller of the two lots. She sought relief—in the form of a dimensional variance—from the minimum-area and frontage requirements that the zoning ordinance required for a property owner to construct a single-family residence. She presented no evidence, however, to show that she would be denied a legally permitted beneficial use of her property unless, "because of hardship," G.L.1956 § 45–24–41(a), the zoning board granted her request for a dimensional variance.

Several of the neighboring property owners objected to Caruso's application, including plaintiffs/petitioners Anthony Sciacca, Richard Loffredo, Silvia Mollicone, and Ernest Berube. A qualified real estate appraiser and consultant testified for the objectors. He opined that the merged lots should not have been subdivided and that Caruso would suffer no loss of the beneficial use of her property if the board denied her request for a dimensional variance. He also testified that if the zon-

---

minimum area requirements, or both, then the largest area and frontage which the adjoining common ownership make possible shall be provided.

"No parcel, tract or lots of land contiguous to each other and under single ownership shall be subdivided in a manner where the lot width or area shall be below the requirements fixed by this chapter. No yard, or open space provided around any building for the purpose of complying with the provisions of this chapter, shall again be used as a yard or open space for any other building.

"Nothing contained in paragraphs (a) or (b) shall be construed to exempt such lots from the side yard, front yard, and rear yard requirements of the zone in which such lots are located." Johnston Town Code § 26–16(b) (1995). (Emphasis added.)

Repeatedly, this Court has upheld the validity of merger provisions like this one. *See*

*Brum v. Conley*, 572 A.2d 1332, 1334–35 (R.I. 1990); *Skelley v. Zoning Board of Review of South Kingstown*, 569 A.2d 1054, 1056–57 (R.I.1990); *R.J.E.P. Associates v. Hellewell*, 560 A.2d 353, 355–56 (R.I.1989).

**2.** The neighboring property owners included the named plaintiffs in the Superior Court zoning appeal, who constitute the petitioners before us. They are Anthony Sciacca, Richard Loffredo, Silvio Mollicone and Ernest Berube.

**3.** The planning board's decision to grant Caruso's subdivision request directly conflicted with the merger provision of the town's zoning ordinance. *See* Johnston Town Code § 26–16(b) ("No parcel, tract or lots of land contiguous to each other and under single ownership shall be subdivided in a manner where the lot width or area shall be below the requirements fixed by this chapter.").

ing board permitted Caruso to construct another house on her property, it would "crowd" the lot and lessen the value of the adjoining properties. Caruso presented no evidence to contradict or rebut this expert's testimony; nor did she otherwise satisfy her burden of proving that, absent the zoning board granting her a dimensional variance, she would have no "other reasonable alternative way to enjoy a legally permitted beneficial use of the subject property," *see* § 45–24–31(61)(ii), and, therefore, would experience "the hardship suffered by the owner of the subject property if the dimensional variance is not granted." Section 45–24–41(d)(2).

The zoning board heard the application on October 30, 1997, and unanimously denied it. About one month later, however, the zoning board moved on its own initiative to reconsider the application. The record is silent concerning why it did so. Ultimately, on January 29, 1998, the zoning board granted Caruso's requested variance by a four-to-one vote, filing its written decision on March 5, 1998. The zoning board gave no reasons for its ruling, nor did its decision indicate why it had reconsidered its earlier denial of the requested variance. The neighbors then appealed the zoning board's decision to the Superior Court pursuant to § 45–24–69 (allowing aggrieved parties to appeal decisions of the zoning board of review to Superior Court).

A justice of the Superior Court reviewed the zoning board's decision under § 45–24–69.[4] On September 15, 1999, he affirmed the decision of the zoning board and entered an order about one week later that reflected his decision. In his decision the trial justice ruled that, because the planning board previously had granted the requested subdivision and lot-line change for Caruso's merged property, "the merger provisions of * * * the Ordinance are not relevant to review of this matter." The trial justice also found that the zoning board acted within its authority when it reconsidered its initial decision to grant a variance. Finally, the trial justice determined that Caruso had met the threshold showing required for the granting of a dimensional variance ("more than a mere inconvenience") and that the evidence before the zoning board was "in conformity with" the relevant provisions of the town's zoning ordinance.

Several of Caruso's neighbors (plaintiffs below) ultimately petitioned this Court for a writ of certiorari, arguing that that the Superior Court's decision to uphold the zoning board's granting of the variance, as well as the process by which the zoning board had arrived at its reconsidered decision, violated various provisions of state and local zoning laws. We granted the neighbors' petition for issuance of the writ, and the case is now before us on their request for certiorari.

---

4. General Laws 1956 § 45–24–69 provides, in relevant part, that in reviewing zoning board decisions, the Superior Court:

"shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:

(1) In violation of constitutional, statutory, or ordinance provisions;

(2) In excess of the authority granted to the zoning board of review by statute or ordinance;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

On a petition for certiorari from a Superior Court judgment that has entered after an appeal from a municipal zoning board's decision, we confine our review to a determination of whether the trial justice acted within his or her authority as set forth in § 45–24–69. *See Sawyer v. Cozzolino*, 595 A.2d 242, 245 (R.I.1991). "We shall not weigh the evidence but shall determine whether competent evidence exists to support the trial justice's decision. That decision will not be reversed unless the trial justice 'misapplied the law, misconceived or overlooked material evidence, or made findings that were clearly wrong.'" *Id.* (citing *Brum v. Conley*, 572 A.2d 1332, 1335 (R.I.1990) and *Skelley v. Zoning Board of Review of South Kingstown*, 569 A.2d 1054, 1056 (R.I.1990)).

## Analysis

In her application to the zoning board, Caruso sought a variance from the dimensional or area restrictions that governed a permitted residential use of her property in the R–20 zoning district where lot No. 92 was located. Since *Viti v. Zoning Board of Review of Providence*, 92 R.I. 59, 65, 166 A.2d 211, 214 (1960), such a request for "relief from the literal require-

ments of a zoning ordinance because of hardship," § 45–24–41(a), has been referred to as a "dimensional variance," a "deviation," or an "area variance," [5]—even though this state's original zoning enabling act made no specific provision for a deviation or dimensional variance. G.L.1956 (1956 Enactment) § 45–24–19(c). This Court, however, had repeatedly interpreted *Viti* as holding that, for an applicant to obtain this type of relief, the landowner "need only demonstrate an adverse impact amounting to more than a mere inconvenience." *Gara Realty, Inc. v. Zoning Board of Review of South Kingstown*, 523 A.2d 855, 858 (R.I.1987) (quoting *DeStefano v. Zoning Board of Review of Warwick*, 122 R.I. 241, 246, 405 A.2d 1167, 1170 (1979)). *See also Viti*, 92 R.I. at 65, 166 A.2d at 214.

But these cases were all decided before the General Assembly comprehensively amended Rhode Island's zoning laws in 1991. *See* P.L.1991, ch. 307, § 1 (1991 amendment).[6] That enactment accomplished two principal objectives. First, it repealed what formerly had been sections 1 through 26 of chapter 24 of title 45 of the General Laws. As a result, those zoning provisions that had authorized municipali-

---

**5.** A use or "true variance" defines the relief sought when an owner seeks to employ land for a use not permitted in that zoning district under the applicable zoning ordinance. A dimensional or area variance—also known as a "deviation"—provides relief from one or more of the dimensional restrictions that govern a permitted use of a lot of land, such as area, height, or setback restrictions. *See generally Sako v. DelSesto*, 688 A.2d 1296, 1298 (R.I.1997) (using terms "dimensional variance" and "deviation" interchangeably); *Sawyer v. Cozzolino*, 595 A.2d 242, 244 n. 4 (R.I.1991).

**6.** In particular, the 1991 amendment in § 45–24–41(d)(2), redefined "more than a mere inconvenience" as "mean[ing] that there is no other reasonable alternative to enjoy a legally

permitted beneficial use of one's property." *See also* § 45–24–31(61)(ii) (defining dimensional variance and requiring applicant to show "there is no other reasonable alternative way to enjoy a legally permitted beneficial use of the subject property"). These definitions suggest that if a property owner can enjoy a legally permitted beneficial use of the property *without* the proposed variance—as a reasonable alternative to doing so *with* the proposed variance—then the application for a dimensional variance should be denied. Thus, under this new definition of "more than a mere inconvenience," it is now more difficult for a property owner to obtain a dimensional variance than it was under the pre-1991 amendment standard of "more than a mere inconvenience" that flourished in the era when the *Viti* doctrine was still alive.

ties to relieve property owners of particular zoning restrictions by means of a variance, including deviations and dimensional variances, were superseded by § 45–24–41. Second, it created a new, uniform, and comprehensive statewide zoning plan that revised previous zoning laws in several important respects. By its terms, the 1991 amendment required all municipalities within the state to conform their existing zoning ordinances to its provisions by December 31, 1994. Otherwise, any such nonconforming municipal ordinances would be "repealed" and rendered "null and void" as of that date. *See* § 45–24–28.

The 1991 amendment also specifically provided that "[t]here are only two (2) categories of variance[:] a use variance or a dimensional variance." Section 45–24–31(61). After defining both terms, § 45–24–41(d)(2) prescribes that, for a property owner to obtain a dimensional variance, the applicant must satisfy the zoning board "that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience, which means that *there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property*." (Emphasis added.) This new statutory burden of proof created by the 1991 amendment effectively sounded the death knell for the old *Viti* doctrine that had allowed a property owner to obtain a dimensional variance simply by demonstrating an adverse impact amounting to more than a mere inconvenience. *See Gara Realty, Inc.*, 523 A.2d at 858; *DeStefano*, 122 R.I. at 246, 405 A.2d at 1170; *Viti*, 92 R.I. at 64–65, 166 A.2d at 213. Those cases, as they relate to the burden

of proof required to authorize the granting of a dimensional variance, have been superseded now by the 1991 amendment. *Newton v. Zoning Board of Review of Warwick*, 713 A.2d 239, 241 (R.I.1998).

Whether the applicant seeks a use or a dimensional variance, however, the 1991 amendment still continues to mandate that "a variance may not be granted to the owner of a substandard lot where such lot was created by the deliberate conduct of the applicant. * * * An area variance may not be granted to solve the problem of an applicant * * * who proposed to divide [her] property into two substandard parcels." *Rozes v. Smith*, 120 R.I. 515, 521, 388 A.2d 816, 820 (1978) (quoting 3 Robert M. Anderson, *American Law of Zoning* § 18.57 at 299–300 (2d ed.1977)); *see also* § 45–24–41(c)(2) (requiring the applicant to show that "the hardship is not the result of any prior action of the applicant"). In this case, even though the trial justice's decision correctly focused upon § 45–24–41(c), he overlooked not only Caruso's burden of proving "no other reasonable alternative" to enjoying the use of lot No. 92 except by granting the requested variance, but also the self-created hardship rule of § 45–24–41(c)(2), which provides:

"In granting a variance, the zoning board of review requires that evidence to the satisfaction of the following standards is entered into the record of the proceedings:

* * *

(2) That *the hardship is not the result of any prior action of the applicant* and does not result primarily from the desire of the applicant to realize greater financial gain." [7] (Emphasis added.)

---

7. In addition to § 45–24–41(c), the town's zoning ordinance also contains this same language in defining the board's duty when passing upon a request for a variance. *See* Johnston Town Code, § 26–19(b) ("In granting a variance, the zoning board shall require that evidence of the satisfaction of the following standards be entered into the record of the proceedings: * * * (2) That the hardship is not the result of any prior action of the appli-

This language instructs zoning boards and reviewing courts that the grant of a requested zoning variance is improper when, among other reasons, the alleged hardship results from "any prior action of the applicant." *See generally* 7 Patrick J. Rohan, *Zoning and Land Use Controls* § 43.02[6] at 43–66 (1998) ("The label [of self-created hardship] seems to be most properly employed where one acts in violation of an ordinance and then applies for a variance to relieve the illegality."). Although some states apply the self-created hardship rule only in situations involving "use" variances (but not to "dimensional" variances like the one at issue here), we discern no reason to so limit the scope of this rule. *Cf. id.* at 43–71 (criticizing jurisdictions that relax the self-created hardship rule in cases involving area variances: "Clearly, the concerns of fostering disrespect for the law and encouraging zoning violations are as applicable to the area variance situation as to the use variance situation."). Moreover, the plain language of § 45–24–41(c) does not differentiate between the type of variance sought by the applicant; rather, it applies equally to requests for dimensional, as well as for use variances.

Given this statutory language and the circumstances concerning how Caruso created the substandard lot that was the subject of her variance request, the zoning board's grant of a dimensional variance in this case improperly ignored the "prior action of the applicant" in creating the alleged hardship. Here, the undeniable fact is that Caruso's prior action caused the planning board to subdivide her single-conforming lot into two substandard-sized parcels, thereby creating the undersized lot in question. This "prior action" resulted in the self-created hardship that she later used as the basis for her variance request.[8] Thus, Caruso sought relief from dimensional zoning requirements that became applicable to her substandard lot only because of her earlier illegal subdivision of the property before the planning board. By ignoring these circumstances and refusing to consider Caruso's "prior action" in causing the planning board to subdivide her single merged lot back into two undersized lots, the zoning board and the Superior Court misapplied state law, respectively, in granting and, then, in upholding the requested variance. Instead of considering whether Caruso's "prior action" before the planning board had created the "hardship" for which she now sought a dimensional variance, the trial justice accepted the planning board's conditional decision[9] to subdivide Caruso's property into substandard lots as binding upon the zoning board, and he then declared that the merger provisions of the zoning ordinance were "not relevant to

---

cant and does not result primarily from the desire of the applicant to realize greater financial gain.").

8.  An ancient legal maxim speaks to this type of conduct: *"Nullus commodum capere potest de injuria sua propia."* ("No person should profit by his or her own wrongdoing.").

9.  When an applicant requires both planning board approval and a variance from a local zoning ordinance to use his or her property in a certain manner, any planning board decision in favor of the applicant is conditional in

nature and therefore does not relieve the zoning board from taking into account the self-created hardship language of § 45–24–41(c). *See* G.L.1956 § 45–23–61(a)(1) (explaining the procedure to be followed by applicants requiring both a variance and planning board approval: "[T]he applicant shall first obtain an advisory recommendation from the planning board, as well as conditional planning board approval * * * which may be simultaneous, then obtain conditional zoning board relief, and then return to the planning board for subsequent required approvals.").

[the] review of this matter." As a result, he failed to note that the hardship Caruso sought to avoid via the requested variance was entirely of her own making.

For these reasons, we hold that, in affirming the zoning board's decision, the trial justice misapplied § 45–24–41(c), overlooked material evidence, and made findings that were clearly erroneous. To rule otherwise would allow Caruso and other similarly situated property owners to circumvent applicable zoning laws pertaining to the validity of merger provisions like those in the town's zoning ordinance, as well as to evade the threshold showing of hardship that is required to obtain relief from their application through the granting of a dimensional variance.

### Zoning Board Record and Decision

Given our ruling on the merits of this case, we have no need, and therefore, we decline to address the other procedural issues raised in the petitioners' brief. We take this opportunity, however, to caution zoning boards and their attorneys to make certain that zoning-board decisions on variance applications (whether use or dimensional) address the evidence in the record before the board that either meets or fails to satisfy each of the legal preconditions for granting such relief, as set forth in § 45–24–41(c) and (d). Such a specification of evidence in the decision will greatly aid the Superior Court, and, if necessary, this Court, in undertaking any requested review of these decisions. Indeed, because of the barebones nature of the record certified to us by the zoning board in this case, we deem it necessary to comment upon its insufficiency.

"This [C]ourt has stated on many occasions that a municipal board, when acting in a quasi-judicial capacity, must set forth in its decision findings of fact and reasons for the action taken." *Irish Part-*

*nership v. Rommel,* 518 A.2d 356, 358 (R.I. 1986). Findings made by a zoning board "must, of course, be factual rather than conclusional, and the application of the legal principles must be something more than the recital of a litany." *Id.* at 358–59.

Here, it appears that one of the zoning board members, who later moved to grant the Caruso petition, had noted that he was doing so because he was apparently familiar with the "very nice neighborhood" where Caruso lived, observing that "I have been through there several times." As this Court noted in *DeStefano,* 122 R.I. at 247, 405 A.2d at 1171, when a zoning board's decision relies upon one or more board members' special knowledge of a local area or condition, the board's decision reflecting its "special knowledge will not be upheld * * * unless the record reveals the underlying facts or circumstances the board derived from its knowledge of the area." The record before us fails to reveal those underlying facts. Indeed, given a certified record in this case that discloses absolutely no evidence to support the zoning board's decision, it could not be upheld in any event. And because its decision contained neither findings of fact nor conclusions of law, the zoning board completely disregarded its obligation to spell out its conclusions and reasoning, a duty that is clearly set forth in Article VI, Section H(1) of the Johnston Zoning Ordinance adopted on December 14, 1994. *See also Irish Partnership,* 518 A.2d at 358–59.

In short, we can only repeat what this Court stated many years ago in *Souza v. Zoning Board of Review of Warren,* 104 R.I. 697, 699–700, 248 A.2d 325, 327 (1968):

"Finally, we point out that it would be difficult to sustain the board's decision in any event in view of the inadequate record kept by it and also because of the inadequacy of the statement summarizing its decision. It might be appropriate

586

to suggest again that, because of the complicated legal questions incident to all zoning hearings, zoning boards should avail themselves of the legal service of their municipal legal departments. This would, in our judgment, aid the boards in the administration of justice to all who come before them."

## Conclusion

The petition for certiorari is granted, the judgment of the Superior Court is quashed, and the case is remanded to that court with instructions to enter an amended judgment that vacates the zoning board's decision to grant the requested variance and, instead, denies the variance for the reasons stated in this opinion.

Chief Justice WILLIAMS did not participate.