DECISION
Before this Court is a consolidated appeal from the Portsmouth Zoning Board of Review ("Zoning Board"), which granted Carol Zinno ("Ms. Zinno or Appellee") dimensional variances, as well as the appeal from the Portsmouth Planning Board of Appeal (Appeals Board), which granted Ms. Zinno permission to subdivide her lot. Appellant Alexandra Bonome ("Ms. Bonome or Appellant") seeks reversal of the Board's decision. Jurisdiction is pursuant to G.L. 1956 § 45-24-69 and § 45-24-71.
 I Facts and Travel
The lot in question is located at 178, 182 Glen Road, Portsmouth, also identified as Tax Assessor's Map 59 (the "Property"). The Property is located in a Residential District ("R-10 Zone"). The Portsmouth Zoning Ordinance (the "Ordinance") requires a minimum area of 30,000 square feet, minimum frontage of 125 feet, and minimum side yard set backs of 20 feet. See Ordinance Article IV-3(b). The Property is approximately 21,706 square feet with frontage of 122 feet and a west side setback of approximately 9 feet. See Defendant's Application to Zoning Board. *Page 2 
The Property is currently the site of two full-size, single family dwellings which stand side-by-side on the tract. One of the dwellings, 182 Glen Road, is occupied by Ms. Zinno, and the other dwelling, 178 Glen Road, is vacant. (Tr. 6/28/07 at 12, 22.) Each residence has a separate driveway, septic system, connection to town public water, and electricity meter. (Tr. 6/28/07 at 14, 15.) The present development of the property preceded the adoption of the zoning ordinance by at least one hundred years. (Tr. 6/28/07 at 13.)
Ms. Zinno now desires to sell one of the houses. Thus, in May 2007, Ms. Zinno applied to the Planning Board for permission to subdivide her lot into two parcels and to the Zoning Board for dimensional variances from lot size, frontage, and set back requirements to allow the subdivision. One proposed parcel would be 11,059 square feet, and the other would have 10, 646 square feet.Id. at 16.
 A Planning Board Proceedings
On June 20, 2007, the Portsmouth Planning Board (the "Planning Board") heard Ms. Zinno's request for a subdivision and Appellant's objections. Appellant and her husband appeared and testified in opposition to Ms. Zinno's application. (Appellant's Ex. E.) Appellant and her husband alleged that the subdivision, if allowed, would create lots that would be out of character with the surrounding area and would establish a precedent that could lead other similar properties to seek subdivision. (Appellant's Ex. E at 3.) The result, they argued, would be a change in character of the neighborhood from one characterized by large lots and open space to smaller lots more appropriate to an R-10 or R-15 zone. See id. Appellant also raised questions about the impact that the *Page 3 
subdivision would have on the capacity of the lots to adequately provide back up areas for septic systems on the Property and the impact of the subdivision on an access easement that Appellant possesses over Ms. Zinno's Property. Id. Further, Appellant argued that Ms. Zinno required "Waivers and Modifications" from the Planning Board of subdivision regulation requirements that the application be in compliance with certain provisions of the Zoning Ordinance and Comprehensive Plan. Id. Appellant contended that the application was improperly classified as a minor subdivision when it was a major subdivision pursuant to the subdivision regulations. (Appellant's Ex. E at 3.)
At the Planning Board hearing, Barry O'Neill, a neighbor, also voiced his concerns for the precedent that the proposed subdivision would set. Mr. O'Neill stated that he was concerned about the character of the neighborhood and "this type of subdivision bec[oming] a trend." (Appellant's Ex. E at 3.)
The Planning Board then voted unanimously to grant conditional subdivision approval, subject to Ms. Zinno's obtaining all required variances from the Board and confirmation that the houses had separate "utilities, septic and access." (Ms. Zinno's Ex. 2.) Appellant subsequently appealed the Planning Board's decision to the Appeals Board, and the appeal was heard on August 16, 2007. After considering the record and argument of counsel, the Appeals Board voted unanimously to deny the appeal.
A written decision was issued on August 30, 2007 and was recorded and posted on August 31, 207. (Appellant's Ex. K.) Thereafter, Plaintiff filed a timely appeal to this Court. *Page 4 
 B Zoning Board Proceedings
On June 28, 2007, at an advertised hearing, the Zoning Board heard Ms. Zinno's petition for dimensional relief. At the beginning of the hearing, Appellant made a motion to dismiss the application based on G.L. § 45-24-40 and Article VI, Section C(2) of the Ordinance, both titled "Alteration to Nonconforming Development." The Zoning Board denied Appellant's motion. (Tr. 6/28/07 at 10-11.)
At the Zoning Board hearing, Ms. Zinno testified as to the general characteristics of her property as well as the changes associated with her proposed subdivision. See (Tr. 6/28/07 at 13-21.) She testified that the proposed subdivision and necessary variances would not cause any visible changes to the Property.Id. at 21. Ms. Zinno further testified that she sought dimensional relief because she desired to sell the property and did not wish to be a landlord. Id. at 16, 23. She stated that she believed that it was "not nearly as easy" to sell the property as one lot with two structures as it would be to sell it as two lots with on structure upon each lot. Id. at 16-17, 22. Furthermore, in responding to a series of questions from her attorney, Ms. Zinno made clear that the primary goal of the subdivision was not increased profits and exactly why she believed that a denial of her request would be "more than a mere inconvenience":
 Q: This request is not being made primarily to realize financial gain?
 A: No, not at all.
 Q: Its (178) a full sized house?
 A: They're (both) full sized.
 Q: They both require all the maintenance that a full sized house — a normal full sized house does, and what you have is this property that has (inaudible) (requires) maintenance on 20 thousand square feet right now? *Page 5 
 A: Absolutely.
 Q: It's a hardship for you as a property owner?
 A: Absolutely. (Tr. 6/28/07 at 32-33.)
Appellant could not attend the June 28, 2007 hearing and, instead, submitted a statement outlining her concerns about Ms. Zinno's proposed project. The Zoning Board accepted this statement and read it into the record. (Tr. 6/28/07 at 34-38.) The statement expressed Appellant's concern that allowing the subdivision would create lots that did not comport with the character of the surrounding area and set a bad precedent because many of the lots in the area have one or more large structures upon them. Appellant's counsel then sought to introduce a real estate expert to testify as to the character of the area, but on a 4-1 vote, the Zoning Board closed the proceeding and did not permit the expert testimony. (Tr. 6/28/07 at 38-39.)
At the conclusion of the hearing, the Zoning Board voted unanimously to grant the requested dimensional variances. (Tr. 6/28/07 at 50.) Thereafter, the Zoning Board issued a written decision dated August 14, 2007. See Zinno's Ex. 4. Appellant subsequently filed a timely appeal of the Zoning Board's decision with this Court. After the records of the Appeals Board and Zoning Board were transmitted to the Superior Court, Appellant filed a motion to consolidate the appeals for briefing and decisions, which was granted.
Before this Court, Appellant argues that 1) the Zoning Board granted dimensional variances in violation of Sec. 45-24-40 of the Zoning Enabling Act and Portsmouth Zoning Ordinance Article VI, Section C(2), both titled "Alteration to Nonconforming Development;" 2) the evidence submitted by Defendant was inadequate as a matter of law to support granting dimensional variances; 3) the Zoning Board's written decision is *Page 6 
inadequate in that it fails to state the evidence which it relied upon that purportedly met the standards for granting dimensional variances; and 4) the Zoning Board violated Appellant's due process right to be heard fully on her objection by the Board's refusal to hear Plaintiff's proposed expert witness testimony.
As to the Appeals Board, Appellant argues that the Planning Board violated the Planning Regulations requiring compliance with certain sections of the Zoning Ordinance, and failed to consider, grant, or render a written decision on Waivers and Modifications of those provisions of the Regulations, as required for this application and Appellant also argues that the Planning Board misclassified Ms. Zinno's subdivision application as a Minor Subdivision and failed to follow the Subdivision Regulations relating to the number and precedent of approvals for subdivision applications that require variances from the Zoning Board.
 II Zoning Board of Review Sitting as Planning Board ofAppeals A Standard of Review
Section 45-23-71 governs appeals to Superior Court from decisions of boards of appeal regarding the subdivision of land. Subsection (c) of section 45-23-71 provides:
 The court shall not substitute its judgment for that of the planning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of appeal or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, *Page 7 
ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the planning board by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. (Emphasis added.)
The Superior Court must review such decisions utilizing the "`traditional judicial review' standard that is applied in administrative-agency actions." Monroe v. Town of E.Greenwich, 733 A.2d 703, 705 (R.I. 1999). Thus this Court may not consider the credibility of witnesses, weigh the evidence, or make findings of fact. Id. Rather, the Superior Court's review is confined to a search of the record to determine whether the board's decision rests on "competent evidence or is affected by an error of law." Id.
 B Zoning and Subdivision Statutes
Zoning and planning Boards serve separate functions relating to land use regulation. Zoning provisions apply to all land and, in substantial part, are promulgated to regulate dimensional criteria such as lot size, setbacks and frontage in addition to use. Subdivision regulations, on the other hand, apply only to the act of "subdividing."[1] Under the Development Review Act, planning boards control the regulation of subdivisions. Also, planning boards have the power to grant waivers and modifications of subdivision requirements. See § 45-23-62. *Page 8 
Although planning boards of appeal and zoning boards of review are often composed of the same members, their duties are distinct.See § 45-23-69(c) (zoning board acting as board of appeal must hold separate meetings and maintain separate minutes and records).
The Development Review Act sets forth the procedure to be followed in applying for approval for each of the three types of subdivision. An "administrative subdivision" occurs where "[r]e-subdivision of an existing lot yields no additional lots for development, and involves no creation or extension of streets." Sec. 45-23-32(2). A "minor subdivision" consists of two stages, preliminary and final, and does not require a public hearing unless a public street is created or extended. However, a development plan that requires waivers and modifications as specified in the Development Review Act cannot be classified as a minor subdivision. Sec. 45-23-32(24). Property owners seeking to subdivide their property in a manner that does not qualify as either an administrative or minor subdivision are seeking a "major subdivision" under the terms of the Act. Sec. 45-23-32(22). Approval requires satisfying three steps including obtaining master plan approval from the planning board, submitting a preliminary plan for which a public informational meeting must be held, and then obtaining final approval by a vote of the board. Sec. 45-23-39(b).
When an applicant in Portsmouth requires both a variance from the local zoning ordinance and planning board approval, Article XIII(B)(1)(a) of Portsmouth Land Development and Subdivision Regulations (the Regulations applies. It reads in pertinent part: *Page 9 
 the applicant shall first obtain an advisory recommendation from the planning board, as well as conditional planning board approval for the first approval stage for the proposed project, which may be simultaneous, then obtain conditional zoning board relief, and then return to the planning board for subsequent required approval(s). Article XIII(B)(1)(a).
The language of Article XIII(B)(1)(a)m is identical to that of G.L. Section 45-23-61(a), which provides for subdivision requiring both planning and zoning board approval on the state level. See § 45-23-61(a)(1); seealso Regulations, Art. XIII(B)(1)(a).
Thus, once the Applicant has successfully obtained conditional approval from the planning board and the zoning board has granted the necessary variances, the planning board can grant final approval for the project. See Sawyer v. Cozzolino,595 A.2d 242, 247 (R.I. 1991) (holding that parties seeking a subdivision requiring a dimensional variance must first apply for conditional subdivision approval from planning board then seek variance from zoning board for non-conforming lots).
Here, the instant appeal is from the Zoning Board decision in its capacity as the Planning Board of Appeals, upholding the conditional approval of a subdivision. Specifically, Ms. Zinno seeks a subdivision and zoning relief to transform a lot that is non-conforming in terms of use into two lots that both conform to the use but not the dimensional standards for an R-10 district by having a single family home on each lot. Rhode Island statutory law defines "nonconformance" as "a building, structure, or parcel of land, or use thereof, lawfully existing at the time of the adoption or amendment of a zoning ordinance and not in conformity with the provisions of that ordinance or amendment." See45-24-31(49). Non-conforming uses are "protected because [they] existed lawfully before the effective date of the enactment of the zoning restrictions and *Page 10 
[have] continued unabated since then." RICO Corp. v. Town ofExeter, 787 A.2d 1136, 1144 (R.I. 2001) (citing Town ofScituate v. O'Rourke,103 R.I. 499, 503, 239 A.2d 176, 179 (1968)). With respect to alterations of non-conforming developments, the Portsmouth Zoning ordinance provides: "[a] legally non con-conforming use shall not be changed to a use other than a conforming use." (Ordinances, Art. VI(C)(3).)
 C Inadequate Findings
Under § 45-23-60, the planning boards responsible for subdivision regulation are required to
 make positive findings on the following standard provisions, as part of the projects record prior to [conditional] approval:
 (1) The proposed development is consistent with the comprehensive community plan and/or has satisfactorily addressed the issues where there may be inconsistencies;
 (2) The proposed development is in compliance with the standards and provisions of the municipality's zoning ordinance;
 (3) There will be no significant negative environmental impacts from the proposed development as shown on the final plan, with all required conditions for approval;
 (4) The subdivision, as proposed, will not result in the creation of individual lots with any physical constraints to development that building on those lots according to pertinent regulations and building standards would be impracticable. Lots with physical constraints to development may be created only if identified as permanent open space or permanently reserved for a public purpose on the approved, recorded plans; and
 (5) All proposed land developments and all subdivision lots have adequate and permanent physical access to a public street. Lot frontage on a public street without physical access shall not be considered in compliance with this requirement. *Page 11 
Portsmouth's Regulations echo those five standards word for word.See Portsmouth Land Development and Subdivision Regulations Art. XIII(A). The text of Article XIII(A), although substantially similar to the language of § 45-23-60, goes a step further in emphasizing the necessity of coming to positive findings for every subdivision application: "[the board] shall make positivefindings on the following standard provisions." Portsmouth Land Development and Subdivision Regulations Art. XIII(A).[2] (Emphasis added.) The language of the Regulations "differ" from § 45-23-60 in only the single word "shall." This single minor difference demonstrates the intent of the drafters of the Regulations to reinforce the requirement that Planning Boards make positive and specific findings with regard to any subdivision of land with the jurisdiction.
"A municipal board, when acting in a quasi-judicial capacity, must set forth in its decision findings of facts and reasons for the action taken." Sciacca v. Caruso,769 A.2d 578, 585 (R.I. 2001) (internal citations omitted). Rhode Island courts review decisions for content, rather than for form, in determining whether the municipal body has complied with the basic requirements of making findings of fact and conclusions of law to support its decisions. Cullen v. Town Council of the Town ofLincoln, 850 A.2d 900 at 904 (internal citations omitted). In any decision of a municipal body, findings of fact and application of legal principles must be set forth in a way so this Court may review the decision with an understanding of the manner in which evidentiary conflicts were resolved and the applicable regulations were applied. Id. (citing Thorpe v. Zoning Bd. of *Page 12 Review, 492 A.2d 1236, 1237 (R.I. 1985)).
The decision of the Appeals Board fails to meet the statutory standard in terms making clearly accessible positive findings in accordance with the requirements of § 45-23-60. SeeSciacca v. Caruso, 769 A.2d 578, 585 (R.I. 2001). The decision merely introduces the members of the Board, describes the arguments on both sides of the matter, and concludes. It neither mentions § 45-23-60 nor lists or applies all the five statutory requirements in a manner facilitating judicial review.See § 45-23-60.
With no evidentiary support, the Board declares: "appellant had failed to establish that the proposal was inconsistent with the local comprehensive community plan." (Dec. Planning Board of Appeals at 2.) This type of statement does not meet the basic requirement of "making findings of fact and conclusions of law." Cullen, 850 A.2d at 904. The final passage of the decision-"that the Planning Board had not committed a clear error or prejudicial procedural error and the decision of the Portsmouth Planning board was supported by the weight of the evidence in the record" (Dec. Planning Board of Appeals at 2)-exemplifies the conclusory nature of the language. This type of conclusory language does not lend itself to "review or understanding of the manner in which evidentiary conflicts were resolved and the provisions of the Code of Ordinances applied."Cullen, 850 A.2d at 904 (quoting Thorpe v. Zoning Bd. ofReview, 492 A.2d 1236, 1237 (R.I. 1985)).
As a result, this matter must be remanded to the Board with instructions that it make clearly delineated findings of fact and conclusions of law that are support by cited evidence.See § 45-23-71 (providing that the court may affirm the decision of the board of appeal or remand the case for further proceedings, or may reverse or modify the *Page 13 
decision if substantial rights of the appellant have been prejudiced); see also Sciacca v. Caruso,769 A.2d 578, 585 (R.I. 2001).
 III Zoning Board of Review A Standard of Review
The Superior Court's review of a Zoning Board's decision is governed by § 45-24-69. Subsection (d), in relevant part, provides as follows:
 The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. (Emphasis added.)
This Court's review is limited to an examination of "the entire record to determine whether `substantial' evidence exists to support the board's findings." Mill Realty Assocs. v. Crowe,841 A.2d 668, 672 (R.I. 2004). Substantial evidence has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, . . . [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Bd.of Rev. of North Kingstown, 818 A.2d 685, 690 (R.I. 2003) (quoting *Page 14 Caswell v. George Sherman Sand and Gravel Co.,424 A.2d 646, 647 (R.I. 1981)). The decision of the zoning board must be affirmed if the court finds that such competent evidence exists in the record. Monroe, 733 A.2d at 705.
In its review, this Court gives deference to the factual determinations of the Board, the members of which are presumed to have special knowledge of the rules related to the administration of zoning ordinances. Monforte v. Zoning Bd. of Reviewof East Providence, 93 R.I. 447, 449, 176 A.2d 726, 728 (1962);see also Curran v. Church Cmty. Housing Corp.,672 A.2d 453, 454 (R.I. 1996) (recognizing that a reviewing court is precluded from substituting its judgment for that of the zoning board in regards to the credibility of witnesses or the weight of evidence concerning questions of fact). The traditional judicial review standard is applied in appeals from administrative agency actions, and thus this Court conducts a de novo review of questions of law, not questions of fact. See Monroe v. Townof East Greenwich, 733 A.2d 703, 705 (R.I. 1999); seealso Kaveny v. Town of Cumberland Zoning,875 A.2d 1, 7 (R.I. 2005).
 B Inadequate Findings
The Appellant argues that the written decision of the Zoning Board fails to address the appropriate legal standard or set forth sufficient evidence to justify granting the variance. Granting a variance requires that evidence sustaining the following four standards appear in the record:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area . . .;
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily *Page 15 
from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based;
 (4) That the relief to be granted is the least relief necessary." (§ 45-24-41(c) (Emphasis added.)
When a zoning board's decision is conclusional and fails to apply the proper legal principles, "judicial review of the board's work [becomes] impossible." Von Bernuth v. Zoning Bd. ofReview of Town of New Shoreham, 770 A.2d 396, 401 (R.I. 2001). Further, the Superior Court should not search the record to find supporting evidence for a board's decision. Irish Partnership v.Rommel, 518 A.2d 356, 359 (R.I. 1986). An appellate court should not speculate as to the grounds the zoning board relied upon if those grounds are not clearly set forth in the zoning board's decision. Hopf v. Bd. of Review of the City of Newport,102 R.I. 275, 289, 230 A.2d 420, 428 (1967). Indeed, our Supreme Court has "caution[ed] zoning boards and their attorneys to make certain that zoning-board [sic] decisions on variance applications (whether use or dimensional) address the evidence in the record before the board that either meets or fails to satisfy each of the legal preconditions for granting such relief, as set forth in § 45-24-41(c) and (d)." Von Bernuth, 770 A.2d at 402;see also Sciacca v. Caruso,769 A.2d 578, 582 (R.I. 2001).
Here, the Zoning Board failed to present cogently the evidence it relied on in concluding that each of § 45-24-41's preconditions had been met. See Von Bernuth, 770 A.2d at 402. The Zoning Board's opinion, which does not clearly *Page 16 
differentiate between findings of fact and law, presents some of the testimony and arguments in a narrative. Regardless of form, the Zoning Board fails to indicate which parts of the testimony and facts it found persuasive in concluding,
 that the relief requested was the minimum relief necessary and that the hardship that necessitated the request for relief was not the result of prior action of the petitioner but was due to the unique characteristics of the land and structures in question. (Zoning Board Dec. at 2-3.)
This reference to the minimum relief necessary and the hardship being due to a unique characteristic of the land echoes the language of § 45-24-41(c)(1), (4) regarding variance standards.
Though the Zoning Board earlier in its decision made reference to the "structures" in question and recited arguably compelling evidence in its decision, this Court is left to speculate if, in fact, their statements were the evidence relied on by the Zoning Board to determine that the relief requested was the minimum relief necessary and that the hardship was due to the unique characteristics of the land in question.See § 45-24-41(c)(1), (4); see alsoHopf v. Bd. of Review of the City of Newport,102 R.I. 275, 289, 230 A.2d 420, 428 (1967).
The Zoning Board's decision concludes:
 The Board determined that granting the requested relief would not alter the general character of the surrounding area or impair the purpose or intent of the ordinance or the Comprehensive Community Plan and that denial of the relief request would result in more than a mere inconvenience to Petitioner. Accordingly, the Board voted unanimously to grant Petitioners the following dimensional variances. (Zoning Board Dec. at 2.)
Again, the Zoning Board is making clear reference to one of the remaining two of *Page 17 
§ 45-24-41's standards: that the general characteristics of the neighborhood would not be altered.See § 45-24-41(c) (3). The Zoning Board's decision makes reference to testimony that could have possibly persuaded it that Ms. Zinno fulfilled § 45-24-41(c) (3): "She [Ms. Zinno] proposed no new construction and stated that if the request [for a variance] were approved neighbors would notice no difference in the configuration or appearance of the property and the uses of the property would not change. For all intents and purposes, there would be no impact on the surrounding area." (Zoning Board Dec. at 1-2). However, this Court is again left to speculate if, in fact, this was the evidence which persuaded the Zoning Board that granting the variance would not alter the general characteristics of the neighborhood. See § 45-24-41(c)(3); see alsoHopf, 102 R.I. at 289, 230 A.2d at 428.
Although Ms. Zinno's lack of participation in causing the hardship was addressed at the Zoning Board's June 28th
meeting, its decision contains no direct or indirect reference to the remaining relevant legal standard, § 45-24-41(c)(2). This inconsistency reflects the Zoning Board's failure to state and clearly apply the relevant statute.See § 45-24-41(c). In sum, the Zoning Board's language would require this Court to "speculate as to the grounds the zoning board relied upon" because "those grounds are not clearly set forth in the zoning board's decision." Hopf,102 R.I. at 289, 230 A.2d at 428.
It is well settled that when a zoning board fails to make adequate findings of fact, its decision cannot survive judicial review.See Von Bernuth, 770 A.2d at 402. Accordingly, this matter must be remanded to the Zoning Board for further *Page 18 
findings of fact and conclusions of law in order to allow judicial review of the Board's work. See § 45-23-71(c); seealso Von Bernuth, 770 A.2d at 402.
 Conclusion
The opinion of the Zoning Board with regard to Ms. Zinno's variance application is remanded for further findings of fact consistent with this decision. The Zoning Board must fully apply § 45-24-41(c). The Zoning Board, on remand, should address the legal standard for § 45-24-41(c)(1), and (2) with particular care.
The opinion of the Appeals Board of Appeals with regard to Ms. Zinno's subdivision application is also remanded for further finds of fact consistent with this decision. In its decision on remand, the Appeals Board should make clear which pieces of evidence fulfill each of the statutory standards of § 45-23-60.
Council shall submit the appropriate order for entry. *Page 1 
 AMENDED DECISION
This Amended Decision is being filed to correct the following:
On the first page of the Decision filed on Friday, September 25, 2009 the case numbers were listed as: C.A. No. NC-2007-0230 and C.A. No.-2007-0488.
The correct case numbers should be NC-2007-0439 andNC-2007-0488. The remaining contents of the Decision filed on September 25, 2009, remain the same.
[1] Section 45-23-32 "Definitions" provides in subparagraph (51) as follows: "Subdivision-The division or re-division of a lot, tract or parcel of land into two or more lots, tracts, or parcels. Any adjustment to existing lot lines of a recorded lot by any means is considered a subdivision. All re-sub-division activity is considered a subdivision. The division of property for purposes of financing constitutes a subdivision."
[2] For the definition of "shall," see Castelli v.Carcieri, 961 A.2d 277, 284 (R.I. 2008) (citing Conrad v.State of Rhode Island-Medical Center-General Hospital,592 A.2d 858, 860 (R.I. 1991) (holding that the use of the word "shall" contemplates something mandatory or the "imposition of a duty[]"). (Secondary internal citation omitted.)