DECISION
Kaira Construction and Richard Almonte[1] (Appellants) seek reversal of the Board's decision of March 15, 2001, denying Appellants' application for a dimensional variance. This Court has jurisdiction pursuant to G.L. 1956 § 45-24-69.
 FACTS AND TRAVEL
Appellants own Lot 435, comprising approximately 4,500 square feet and located in a Residential General Zone (R8 Zone), North Providence Tax Assessor's Plat 5. Mr. Almonte purchased the property in question in 1992 from Roger and Francoise Cousineau. Appellants applied to the Board for relief from Article IV Section 413 of the North Providence Zoning Ordinance (Ordinance), which governs prerecorded substandard lots of record. Appellants sought to build a single family residence on the vacant lot. Appellants requested relief in the form of a dimensional variance because an R8 zone requires 8,000 square feet for a single family home, according to the current Ordinance.
The Board held advertised hearings on February 15, 2001 and March 15, 2001. The Board heard testimony from Appellants' attorney, as well as various objectors. The parties who testified in opposition to the requested relief included Jeffrey DiDomenico, Kelli DiDomenico, and Kevin DiDomenico. Essentially, these neighbor objectors argued that the Board should not grant the Appellants' application since Mr. Almonte, a commercial builder, was aware when he bought the lot in question that it was undersized and therefore outside the minimum requirements as set forth in the Ordinance. The Board also heard from Mr. Almonte, who argued that the lot fits into the category of a prerecorded substandard lot of record, thereby permitting the Board to grant relief. The North Providence Planning Board submitted a letter to the Board stating that it had reviewed the appellant's application for relief. The North Providence Planning Board voted unanimously to deny the petition, finding it did not conform with the Town's Comprehensive Plan.
The Board took a roll call vote with three members voting to grant Appellants' application and two members voting to deny the requested relief. This voting alignment resulted in Appellants' application being denied, since at least four votes are required to grant a variance pursuant to G.L. 1956 § 45-24-57(2)(iii). The Board issued its written opinion on June 28, 2001.
A timely appeal was filed by Appellants on July 20, 2001. On appeal, Appellants argued that the Board's decision was clearly erroneous, arbitrary and capricious in that a majority of the Board voted to grant the application. Further, Appellants argued that the Board on multiple prior occasions, granted dimensional variance relief to numerous owners in the surrounding area.
This Court remanded the matter to the Board, finding that the written decision was inadequate for proper determination of the appeal. On remand, this Court requested more specific findings, including the factual and legal principles relied upon by each Board member. After remand, Board members Dennis Reall and Armand Milazzo submitted specific factual findings detailing their reasons for voting against Appellants' application for a dimensional variance.
 STANDARD OF REVIEW
General Laws § 45-24-69(D), which directs this Court in its review of a decision of the Zoning Board of Review on appeal, provides:
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This Court, while reviewing an appeal from a decision of the Zoning Board of Review, "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings." Restivov. Lynch, 707 A.2d 663, 665-6 (R.I. 1998) (citing Salve Regina Collegev. Zoning Board of Review of Newport, 594 A.2d 878, 880 (R.I. 1991)). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla, but less than a preponderance." Caswell v. George Sherman Sand and Gravel Co., Inc.,424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 824-5 (R.I. 1978)). "To that end a reviewing court should exercise restraint in substituting its judgment for the judgment of the zoning board which is based on the evidence before it." Hein v.Town of Foster Zoning Board of Review, 632 A.2d 643, 646 (R.I. 1993) (citing Mendosa v. Corey, 495 A.2d 257 (R.I. 1985)).
 Dimensional Variance
To grant a dimensional variance, the Board requires the evidence on the record show:
 "(1) that the hardship from which the applicant seeks relief is due to unique characteristics of the subject land or structure and not the general characteristics of the surrounding areas; and not due to a physical or economic disability of the applicant;
 (2) that said hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) that granting the requested variance will not alter the general characteristics of the surrounding area or impair the intent or purpose of this Ordinance or the Comprehensive Plan of the Town; and
 (4) that the relief to be granted is the least relief necessary.
 (B) The Board shall in addition to the above standards, require that evidence be entered into the record of the proceedings showing that:
 (2) in granting a dimensional variance, that the hardship that will be suffered by the owner of the subject property if the dimensional variance is not granted shall amount to more than a mere inconvenience, which shall mean that there is no other reasonable alternative to enjoy a legally permitted beneficial use of the owner's property. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted shall not be grounds for relief." Zoning Ordinance § 503(A) (B)
At the time of the hearing, the applicable zoning provision, G.L. 1956 § 45-24-41, required that the applicant demonstrate that "no other reasonable alternative" exists for the enjoyment of a legally permitted use before a variance is properly issued. See Sciacca v. Caruso et al.,769 A.2d 578, 583 (R.I 2001.) On June 28, 2002, however, our State General Assembly repealed that portion of the Enabling Act so that applicants for dimensional relief need only demonstrate that the hardship complained of amounts to "more than a mere inconvenience," otherwise known as the "Viti Standard." Thus, the higher standard required of variance applicants in Sciacca has been superseded by the June 28, 2002 legislative act.
The Board voted three to two in favor of granting the variance, with Board members Dennis Reall and Armand Milazzo voting against the petition. The Board's initial findings ostensibly supported the granting of the variance. In its written decision:
 "(1) The Board was of the opinion that proposed use would not alter the general characteristics of the surrounding neighborhood.
 (2) The Board was of the opinion that the relief requested was the least necessary and that the quality of life in the neighborhood would not be diminished.
 (3) The Board was of the opinion that the Variance requested by the Applicant was not a result of the prior actions of the Applicant." Decision Letter.
However, with respect to the majority voting in favor of granting the dimensional variance, the Ordinance states that the concurring vote of four of the five members of the Board shall be "required to decide in favor of an applicant on any matter within discretion of the Board upon which it is required to pass under this Ordinance, including variances and special use permits." Zoning Ordinance, Article IX, § 901F(3). Consequently, the Appellant's application was denied despite the fact the vote was three to two in favor of granting the variance.
 Undersized Lot
The Ordinance calls for a minimum land area of 8,000 square feet for single family housing in a Residential General Zone. Zoning Ordinance
§ 201(3). Appellants, however, argue that the § 413 creates an exception for substandard lots of record.
 "A lot smaller that [sic] the minimum area and width required by this ordinance, which was a lot of record on the effective date of this amendment which is separately owned may be used for single family dwelling in any RS, RL, RG, CL or CG district provided that said lot shall have minimum width of 40 feet and a minimum area of 3,200 square feet and further provided that connection is made to a public water and sanitary sewer." Zoning Ordinance § 413.
The above amendment was adopted in December 1994. Although the Appellant purchased the lot in 1992, the lot was recorded in 1905, thus making it a lot of record on the date of the amendment. Furthermore, the lot in question also measures approximately 4,500 square feet with 50' feet of frontage 90' feet of depth, meeting minimum width, depth, and size requirements outlined in § 413. The lot is also serviced by public sewer and water, as required by the amendment.
Both Reall and Milazzo cite the size of the lot as a reason for rejecting the application. Milazzo states, "The reason I voted against this application is that our Comprehensive plan states that you nee[d][sic] 8,000 square feet to build a home." Milazzo Remand Letter.
Reall also states, "I voted against this application because the lot is undersized, and it seems to me that there was no research done to see if a compromise could be reached on both sides." Reall Remand Letter.
The Board's rejecting the application on the basis of the lot size, without further explanation, was clearly erroneous. Section 413 gives authority for substandard lots, meeting all the requirements, to be used for single family dwellings. The section does use the words "may be used," indicating that the Board still possesses some discretion in this matter. The Ordinance, however, has created an exception for substandard lots of record, such as the lot in question. Further, Appellants' lot meets the size, depth and all other requirements set out for the exception in § 413. Consequently, the Board's rejection of the application simply because it does not meet the size requirement is arbitrary and capricious.
 Comprehensive Plan
The dissenting Board members, Reall and Milazzo, also cite the Town's Comprehensive Plan as another reason for the rejection of the Appellants' application for a dimensional variance. In his explanation for rejecting the Appellant's application, Milazzo stated:
 "These stated reasons are why I voted against the application of Kaira Construction. [T]he applicant failed to satisfy each of the legal preconditions for granting such relief as set forth in Rhode Island General Law, Article 45-24-41 C D. That the granting of the requested variance will alter the general characteristic[s] [sic] of the surrounding area or impair the purpose of the comprehensive plan of the Town of North Providence and the hardship from which applicant seeks relief is a result of buying an undersized lot." Millazo Remand Letter.
Reall also stated, "This application doesn't meet the Town's Comprehensive Plan." Reall Remand Letter.
The North Providence Planning Board submitted a letter to the Board stating that it had reviewed the Appellant's application for relief, and "voted unanimously that the petition did not conform with the Town's Comprehensive Plan." Planning Board Letter, Exhibit B. The Planning Board did not detail exactly how the petition did not conform to the Town's Comprehensive Plan. The dissenting Board members also did not say either if they had relied on the Planning Board's opinion or how they believed the application violated the Town's Comprehensive Plan. In its brief, the defendant simply states, "The three (3) affirmative members ignored the recommendation of the Planning Board to deny the request[ed] [sic] relief herein because it did not comply with the Comprehensive Plan."Defendant's Brief at 3.
Furthermore, the Board's findings of fact seem to support the granting of the application for relief. From the record before it, this Court once again is not given a "specification of [the] evidence" actually relied on by the voting members of the Board in support of its findings. SeeSciaccia, 769 A.2d at 585. The Rhode Island Supreme Court has upheld a Zoning Board's denial of the variance request, with a three to two voting alignment, when there was replete evidence in support of the findings of the minority. See Schofield et al. v. Zoning Board of Review of the Cityof Cranston, 99 R.I. 204, 207, 206 A.2d 524, 526 (1965). However, the record before this Court, even with the supplemented materials, is far from replete. Although the decision of the Planning Board's advisory decision is on the record, neither of the dissenting Board members states that he relied on that Planning Board opinion. Neither of the dissenting Board members elucidates how the variance violates the Town's Comprehensive Plan. Board member Milazzo states:
 "That the granting of the requested variance will alter the general characteristic[s][sic] of the surrounding area or impair the purpose of the comprehensive plan of the Town of North Providence and the hardship from which the applicant seeks relief is a result of buying an undersized lot." Milazzo Remand Letter.
He, however, has not provided the specific evidence to show how he reached these conclusions. For instance, the Board's decision states that a site visit was made, but neither of the dissenting Board members states whether or not this site visit persuaded him one way or another. SeeKelly v. Zoning Board of Review, 180 A.2d 319 (R.I. 1962) (finding that an appellate court will not presume that a zoning board reached its decision based on facts acquired through an inspection and that if such facts are in fact relied upon, they must be disclosed in the record);see also Toohey v. Kilday, 415 A.2d 732 (R.I. 1980) (holding a zoning board may consider factors obtained through observation and inspection).
The Board members are required to provide specific factual findings, beyond the boilerplate statutory language for this Court to properly assess the appeal. See von Bernuth v. Zoning Board of Review of the Townof New Shoreham, 770 A.2d 396 (R.I. 2001). "When the board fails to state findings of fact, the court will not search the record for supporting evidence or decide for itself what is proper in the circumstances." Id at 401. "[D]ecisions [should] . . . address the evidence in the record before the board that either meets or fails to satisfy each of the legal preconditions for granting [variance] relief, as set forth in §45-24-41(c) and (d)." Id. (citing Sciacca v. Caruso, 769 A.2d 578 (R.I. 2001)).
Because of the inadequate written decision and the lack of specific factual findings, this Court may remand or reverse the Board's decision. (See Robert M. Anderson, American Law of Zoning § 27.39 (4th ed. 1995) "A matter should be remanded where the board failed to making findings, or for findings which are inadequate.") The remand order can be based on either a defect in the proceedings or inadequate written findings. See Roger Williams v Gallison, 572 A.2d 61, 62 (R.I. 1990.) The Zoning Board, however, also risks reversal if it fails to follow the directions from this Court regarding the remand. (See Charles H. Koch,Administrative Law and Practice, § 8.31(c), noting ramifications of an agency departing from a court's remand: "Deviation from a federal court's remand order is subject to reversal on further judicial review.")
 CONCLUSION
This Court finds the decision of the Board was not supported by the reliable, probative, and substantial evidence of record. Substantial rights of the Appellants have been prejudiced. Accordingly, the March 15, 2001 decision of the North Providence Zoning Board must be and is hereby reversed.
Counsel shall submit the appropriate order for entry.
[1] Mr. Almonte is the owner and operator of Kaira Construction Inc.. The disputed parcel was transferred from Mr. Almonte to Kaira Construction subsequent to his purchase in 1992.