[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This matter is before the Court on the appeal of Harold Smith ("Appellant") from a decision of the Zoning Board of Review for the City of Warwick ("Board"). The Board's decision denied the Appellant's request for numerous dimensional variances necessary to construct a proposed single-family dwelling on a substandard lot. Jurisdiction is pursuant to G.L. (1956) § 45-24-69.
 Facts and Travel
The Appellant owns real property located on the corner of Haswill Street and Custer Street in the City of Warwick, Rhode Island, otherwise identified as Warwick Assessor's Plat 361, Lot 137 ("Property"). The Property is zoned residential A-40 and located in a coastal hazard flood zone. The Appellant, who has owned the Property since 1973, currently seeks to construct a single-family dwelling on the lot. The shape of the Property most nearly approximates a parallelogram with dimensions of 90 x 47.5, which yield a total of 4,252 square feet.[1] Because the undersized lot is located in an A-40 residential zone, construction of the proposed single-family dwelling mandates substantial zoning relief in the form of dimensional variances from various setback requirements established in the Warwick Zoning Ordinance ("Ordinance").
Pursuant to Ordinance § 906.1 and G.L. (1956) §45-24-41(a), the Appellant applied to the Board for the necessary dimensional relief to accommodate the proposed construction. As stated above, the 4,252 square-foot Property has a lot width of 90 feet. The Plot Plan
submitted with the Appellant's application demonstrated that the construction of the proposed 24 x 40 foot dwelling would result in a ten-foot frontage to Haswill Street, a twenty-two foot frontage to Custer Street, front and corner side yard setbacks of 9 feet and 20 feet, and a rear yard of 9 feet. However, to construct a residential dwelling in an A-40 zone, the Ordinance requires that the lot measure a minimum of 40,000 total square feet with a minimum lot width of 150 feet. In addition, the Ordinance requires that any structure built on the subject lot maintain a minimum frontage of 150 feet, minimum front and corner side yard of 40 feet, and a minimum rear yard of 40 feet. See Ordinance Table 2A — Dimensional Regulations. Consequently, the Appellant's proposal requires dimensional variances from the minimum specifications listed in the Ordinance for total square footage, lot width, frontage, front and corner side yards, and rear yard setbacks.
In compliance with Ordinance § 906.2(B) and G.L. (1956) § 45-24-41(b), the Board conducted a public hearing on the Appellant's application for dimensional relief on May 13, 2003. At the onset of the hearing, the Board heard testimony from Mr. DePasquale, who spoke on behalf of the Warwick City Planning Department ("Department"). After reviewing the Appellant's application, Depasquale testified that the Department discerned four primary problems with the proposal. The Department concluded that if approved and erected, the finished project would (1) lack consistency with the city's Comprehensive Plan and the Warwick Zoning Ordinance; (2) impose undue hardship on neighboring residents; (3) alter the general characteristics of the surrounding area; and (4) detrimentally impact the environment and water quality. See Transcript of Public Hearing at p. 5 (May 13, 2003) ("Tr."). Based on these conclusions, the Department recommended that the Board deny the Appellant's application for zoning relief.
Next, the Board listened to the presentation of the Appellant's argument. Although he submitted no supporting documentation, the Appellant's attorney represented that the Property had never merged with another lot, because the Appellant had never owned any abutting parcel of land. Tr. at p. 7. The Appellant, then, offered the testimony of Paul Sczerbinski, a certified real estate appraiser. Sczerbinksi stated:
 "I've made an analysis of the property located at Plat 361 Lot 137. My findings, analysis are that the highest and best use of the subject property is for construction of a singlefamily dwelling. In addition, it's my opinion that this would have no adverse impact on the neighborhood and that it's the only reasonable use for the subject." Tr. at p. 8.
A review of the hearing transcript reveals that Sczerbinski failed to provide any factual support for his analysis. Despite the complete dearth of evidence offered into the record, the Appellant's attorney offered the following synopsis:
 "To conclude, I'd just like to state that there is an existing hardship due to the unique characteristics and size of the subject property, and it is not as a result of any actions taken by the owner which have created this hardship. The variances requested in this petition are the least amount of relief necessary to construct a single-family dwelling. And, lastly, that it is our opinion that denial of this petition would constitute more than a mere inconvenience to the owner. Essentially, denial of the petition would almost constitute a taking of the property, as it would render the subject property valueless as there are no other valuable legal uses for this vacant parcel of land. I would, therefore, ask the Zoning Board to consider this petition for favorable action." Tr. at p. 10.
Following the presentation of the Appellant's argument, the Board heard objections from eight abutting property owners with respect to the proposal. Stressing the fact that the lot is severely undersized, the objectors raised numerous concerns including the negative impact on the environment, the character of the neighborhood, and local traffic. Additionally, the objectors feared that the proposal would detrimentally affect the common neighborhood efforts to preserve wetlands areas and limit growth on the street. In addition to the testimony provided at the hearing, twenty-five residents had also signed a petition expressing their opposition to the Appellant's request for zoning relief.
After consideration of the testimony presented at the public hearing, the documentation provided in support of the application, and its personal knowledge and expertise of the Property and surrounding neighborhood, the Board found that the Appellant failed to carry the burden of proof necessary to obtain dimensional relief. Consequently, on June 25, 2003, the Board issued a written decision denying the Appellant's request for a dimensional variance to construct the proposed single-family dwelling on the Property.
Pursuant to Ordinance § 908 and G.L. (1956) § 45-24-69, the Appellant timely filed the instant appeal in Kent County Superior Court on July 15, 2003. After receiving the briefs submitted by both parties, the Court is now prepared to render its decision on the merits of the appeal.
 STANDARD OF REVIEW
Section 45-24-69 confers jurisdiction on the Superior Court to review the decision of a zoning board. Section45-24-69(d) provides in relevant part:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
"[T]he Superior Court reviews the decisions of a plan commission or board of review under the "traditional judicial review" standard applicable to administrative agency actions." Restivo v. Lynch, 707 A.2d 663, 665
(R.I. 1998). The Superior Court "lacks [the] authority to weigh the evidence, to pass upon the credibility of witnesses, or to substitute his or her findings of fact for those made at the administrative level." Id.
at 665-66 (quoting Lett v. Caromile, 510 A.2d 958, 960 (R.I. 1986)).
"The trial justice may not substitute [his or her] judgment for that of the zoning board if [he or she] can conscientiously find that the board's decision was supported by substantial evidence in the whole record." MillRealty Assocs. v. Crowe, 841 A.2d 668, 672 (R.I. 2004) (quoting Apostolouv. Genovesi, 120 R.I. 501, 508, 388 A.2d 821, 824-25 (1978)). "Substantial evidence means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." Lischio v. ZoningBoard of Review of the Town of North Kingstown, 818 A.2d 685, 690, n. 5 (R.I. 2003) (quoting Caswell v. George Sherman Sand Gravel Co.,424 A.2d 646, 647 (R.I. 1981)).
On appeal, the Appellant contends that the Board's decision was not supported by competent evidence and was clearly erroneous in view of the reliable, probative, and substantial evidence on the record. Specifically, the Appellant suggests that the Board erred by rejecting the testimony provided by his real estate expert. Further, the Appellant argues that the denial of the requested variance resulted in an adverse impact that constituted more than a mere inconvenience, because he is left without any reasonable legal use of his land.
The Board responds that the Appellant failed to provide either testimonial or documentary evidence necessary to satisfy the four-prong standard for securing dimensional relief. The Board asserts that they rejected the conclusory testimony of the real estate expert, not only on the basis of its personal knowledge and expertise of the Property and surrounding neighborhood, but also because it lacked adequate foundation and factual support. Consequently, the Board argues that it properly denied the Appellant's application because he failed to meet his burden of proof to introduce legally competent testimony and evidence in support of his application for dimensional relief.
The Court has carefully reviewed the arguments raised by both parties and the entire record of the proceedings before the Board. For the foregoing reasons, the Court finds that substantial evidence exists on the record to affirm the Board's denial of the requested variance.
 Dimensional Relief
Section 45-24-31(61)(ii) defines a dimensional variance as:
 "Permission to depart from the dimensional requirements of a zoning ordinance, where the applicant for the requested relief has shown, by evidence upon the record, that there is no other reasonable alternative way to enjoy a legally permitted beneficial use of the subject property unless granted the requested relief from the dimensional regulations."
In order to obtain a dimensional variance, Ordinance § 906.3 (A) sets forth the four-prong standard which an applicant must satisfy to obtain relief:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not the general characteristics of the surrounding area, and is not due to the physical or economic disability of the applicant;
 (2) That said hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general characteristics of the surrounding area or impair the intent or purpose of this zoning ordinance or the comprehensive plan of the city;
 (4) That the relief to be granted is the least relief necessary.[2]
As to the first prong, an applicant must demonstrate "that the hardship the applicant would suffer if the dimensional relief is not granted amounts to more than a mere inconvenience." Lischio, 818 A.2d at 691
(quoting § 45-24-41(d)(2)). Before reviewing the propriety of the Board's determination on the first prong, the Court must briefly address the conflicting definitions of the requisite degree of hardship presented in Ordinance § 906.3(B)(2) and G.L. (1956) § 45-24-41(d)(2).[3]
A brief legislative and judicial history tracing the evolution of the applicable requisite degree of hardship may be helpful. From 1960 until 1991, the judicially created doctrine in Viti v. Zoning Board of Reviewof Providence, 92 R.I. 59, 166 A.2d 211 (1960), established the proposition that applicants for a dimensional variance need only show that the hardship that would result from the denial of a request for dimensional relief amounts to more than a mere inconvenience. As such, applicants "who wanted to establish a right to dimensional relief were not required to demonstrate a loss of all beneficial use of the parcel in the absence of [dimensional relief.]" Lischio, 818 A.2d at 691 (citing Viti,92 R.I. at 64-65, 166 A.2d at 213).
In 1991, the General Assembly amended § 45-24-41(d)(2) to reflect a more stringent degree of demonstrable hardship. The 1991 amendment, which superseded the Viti Doctrine, read in pertinent part:
 "That the hardship that will be suffered by the owner of the subject property if the dimensional variance is not granted shall amount to more than a mere inconvenience, which shall mean that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property." P.L. 1991 ch. 307, § 1 (emphasis added).
From 1991 until 2002, the Court adhered to and applied this heightened standard. See von Bernuth v. Zoning Board of Review, 770 A.2d 396 (R.I. 2001) (discussing effect of 1991 Amendment to § 45-24-41(d)(2) heightening requisite degree of hardship); Sciacca v. Caruso, 769 A.2d 578
(R.I. 2001) (same). Because the last revision of the Ordinance occurred in 2001, Ordinance § 906.3 (B)(2) adopted the language used in the 1991 Amendment. As such, the section reads in relevant part:
 "that the hardship suffered by the owner of the subject property if the dimensional variance is not granted shall amount to more than a mere inconvenience, which shall mean that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted shall not be grounds for relief."
Nevertheless, in 2002, the General Assembly again amended § 45-24-41(d)(2) by removing the language added in 1991 thereby reincarnating the lesser standard represented by the Viti Doctrine:
 "that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience." P.L. 2002, ch. 384, § 1.
It is important to recognize that the amended version of § 45-24-41(d)(2) controls the standard of review, because it effectively preempts the Ordinance language. As articulated in Ordinance § 102, "This ordinance is set forth in compliance with G.L. 1956 §§ 45-24-27 [through] 45-24-72 (as amended), also known as the Rhode Island Zoning Enabling Act of 1991." In addition, the Rhode Island Supreme Court has unequivocally stated that the authority of a zoning board is circumscribed by the terms of the zoning enabling act, and "the jurisdiction thereby conferred can neither be expanded nor diminished by the terms of an ordinance." Lincourt v.Zoning Board of Review of Warwick, 98 R.I. 305, 309, 201 A.2d 482, 485
(1964). Because the instant case arose subsequent to the 2002 amendment, the Court will apply the lesser standard codified in § 45-24-41(d)(2) rather than Ordinance § 906.3(B)(2). As such, to satisfy the first prong of the standard, the Appellant must show that any hardship caused by the denial of his request for dimensional relief amounted to more than a mere inconvenience.
In the instant case, the Appellant argues that the Board's denial of the requested variance deprived him of any reasonable, legally permitted beneficial use of the Property. In support of this argument, the Appellant contends that the testimony of his real estate expert corroborates his claim that construction of a single family house is the only legal use of the Property. Consequently, he advances the argument that the Board's decision is not supported by the reliable, probative, substantial evidence on the record.
The Court finds that the Appellant's argument impermissibly attempts to shift the burden of proof. First, the Court emphasizes that the applicant for a dimensional variance has the burden of proof on each and every prong of the standard. When the applicant fails to carry that burden, the Board must deny the application. Where the Board determines that the applicant has failed to provide sufficient evidence, the Board does not have to independently justify its denial.
Next, the rejection of the testimony of Appellant's proffered real estate expert was well within the Board's discretion. In its appellate capacity, absent a glaring abuse of discretion on the part of the Board, the Court lacks the authority to question the Board's credibility determination with respect to the weight attributed to the testimony of witnesses. See Restivo, 770 A.2d at 665-66.
Further, the Board correctly observed in its written decision that assertions unsupported by any substantive argument do not constitute `competent evidence.' Simply opining that the denial of the requested relief will result in a significant hardship without providing any evidence to support that opinion does not satisfy the first prong of the standard. Given the lack of evidence on the record to refute the Board's conclusions, the Court will not disturb the Board's finding that the Appellant failed to show a hardship which will result in more than a mere inconvenience.
To satisfy his burden on the second prong, the Appellant must demonstrate that the alleged hardship is not the result of any prior action on the part of the applicant and does not result primarily from the applicant's desire for financial gain. Again, the Appellant relied on conclusory statements regarding prior ownership and merger without providing tangible evidence to support this assertion. After reviewing the entire record, the Court agrees with the Board's decision that the "record is devoid of any testimony or documentary evidence entered into the record to justify compliance with this standard." Board's Memorandumof Law in Support of their Decision to Deny Appellant's Zoning ReliefApplication, at p. 4.
With respect to the third prong, the Appellant must demonstrate that the requested relief will not alter the general characteristic of the surrounding area or impair the intent or purpose of Ordinance or the comprehensive plan of the city. With respect to land use regulations, the objectives of the comprehensive plan are as follows: (1) to examine past, present, and anticipated future land use trends; (2) to make efficient use of available land and proper reuse and expansion of existing land uses; (3) to protect, preserve, and enhance residential neighborhoods and environmentally sensitive areas; (4) to rationally accommodate new industrial, commercial, residential, and other development; (5) to avoid land use mistakes of the past; (6) to encourage and promote past, desirable land use practices; (7) to stimulate and provide new policy direction and land use techniques; (8) to strike a balance between pro-development policy and an antigrowth policy; and (9) to provide a policy statement to serve as a reference for land use issues. See Comprehensive Plan of the City of Warwick, Land Use Element, ch. 7, p. 94.
Similarly, the purpose of the Warwick Zoning Ordinance is to (1) promote the public health, safety, and general welfare of the city; (2) provide for a range of uses and intensities of use appropriate to the character of the city and reflect current and expected future needs; (3) provide for orderly growth and development. See Ordinance § 103.
In denying the Appellant's request for dimensional relief, the Board relied on its personal knowledge of the neighborhood to reject the real estate expert's opinion that the proposed construction would not alter the character of the neighborhood. In its written decision, the Board noted that other single-family dwellings located in the neighborhood were situated on much larger lots.
Additionally, the Property is located in an environmentally sensitive, coastal flood hazard area. The Appellant claims that the Coastal Resource Management Council (CRMC) has already approved the proposal, noting that the wetland portion of the lot is separated by a roadway which acts as a significant buffer to the wetlands. However, as has become a pattern, the Appellant provided no documentation to support this claim. Given the testimony offered by Mr. DePasquale on behalf of the Department, the Board had numerous bases to rely on to reach the legitimate conclusion that the proposal ran afoul of the goals and objectives of the Ordinance to protect, preserve, and enhance residential neighborhoods and environmentally sensitive areas and to maintain low densities of construction with coastal areas.
Finally, to satisfy the fourth prong, the applicant must show that the relief provided by the variance is the least relief necessary to alleviate the hardship. It is evident from both the transcript of the public hearing and the Board's written decision, that the fourth prong posed the biggest obstacle to the Appellant's request for dimensional relief. The Board's decision expressed serious concern over the size of the proposed structure relative to the overall size of the Property. The Board correctly maintained that the Appellant could attempt to modify the original plan to present a smaller residence which would necessitate far less relief than the current proposal. The Board justifiably concluded that the four requested setbacks were excessive, and the size of the home requested could not be considered the least relief necessary.
While the Court does not seek to deprive the Appellant of all use of his land, the burden is on the Appellant to demonstrate that four dimensional variances which effectively reduce the remaining land to almost nothing is, in fact, the least relief necessary. The Court is not persuaded that a smaller structure is completely not practicable. Therefore, the Court finds that the record is completely devoid of any evidence to support the Appellant's hollow assertion that the requested relief is the "least relief necessary."
 Conclusion
For the reasons stated above, the Court affirms the decision of the Board and denies the Appellant's request for relief. The Court finds that the Board's decision to deny the application was supported by the reliable, probative, and substantial evidence of record, because the Appellant failed to provide sufficient evidence to satisfy the four-prong standard for securing dimensional relief. Counsel shall submit the appropriate order.
[1] The record contains several different estimates of the Property's total square footage. For purposes of this opinion, the Court will adopt the number used by the Board in rendering its decision. The Board arrived at this number by referring to the Plot Plan prepared by DLR Dimensions Residential Designers and submitted with the Appellant's application for dimensional relief. The Plot Plan depicts the shape of the Property as a parallelogram with dimensions of 90 x 47.5. Per the formula for calculating the area of a parallelogram, the dimensions yield a total value of 4,252 square feet.
[2] The standard set forth in § 906.3(A) of the Ordinance is substantial similar to G.L. (1956) § 45-24-41(c) which reads: "(c) In granting a variance, the zoning board of review requires that evidence to the satisfaction of the following standards is entered into the record of the proceedings:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in § 45-24-30(16);
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary."
[3] It should be noted that the hardship language contained in §45-24-41(d)(2) and Ordinance § 906.3(B)(2) refers exclusively to dimensional variances and does not apply to use variances.